| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1**<br><br>**SILLS CUMMIS & GROSS P.C.**<br>Andrew H. Sherman, Esq.<br>S. Jason Teele, Esq.<br>Gregory A. Kopacz, Esq.<br>Oleh Matviyishyn, Esq.<br>One Riverfront Plaza<br>Newark, New Jersey 07102<br>(973) 643-7000 (Telephone)<br>(973) 643-6500 (Facsimile)<br>asherman@sillscummis.com<br>steele@sillscummis.com<br>gkopacz@sillscummis.com<br>omatviyishyn@sillscummis.com<br><br>*Counsel to the Debtor<br>and Debtor-in-Possession* | Order Filed on August 14, 2024<br>by Clerk<br>U.S. Bankruptcy Court<br>District of New Jersey |
| In re:<br><br>GLOBAL BENEFITS GROUP, INC., *et al.*[1]<br><br>Debtors. | Chapter 11 (Subchapter V)<br><br>Case No. 24-16134 (CMG)<br><br>(Jointly Administered) |

**ORDER, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, APPROVING: (I) MGEN SETTLEMENT AGREEMENT, AND (II) SETTLEMENT SUM ALLOCATION AGREEMENT**

The relief set forth on the following pages, numbered two (2) through three (3), are hereby **ORDERED.**

**DATED: August 14, 2024**

Honorable Christine M. Gravelle
United States Bankruptcy Judge

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Global Benefits Group, Inc. (2750) GBG Holding Incorporated (0280); and International Claims Services, Inc. (6650). The Debtors' address is 902 Carnegie Center Drive, Suite 100, Princeton, NJ 08540.

| | |
|---|---|
| Page: | 2 |
| Debtor: | Global Benefits Group Inc., *et al.* |
| Case No.: | 24-16134 (CMG) |
| Caption: | Order, Pursuant to Federal Rule of Bankruptcy Procedure 9019, Approving: (i) MGEN Settlement Agreement; and (ii) Settlement Sum Allocation Agreement |

Upon consideration of the motion (the "**Motion**") and the *Notice of Filing of Revised Form of Proposed Settlement Agreement With MGEN* [Docket No. 109] (the "**Notice of Revised MGEN Settlement Agreement**")[2] of the Debtors for entry of an order (this "**Order**"), approving the Revised MGEN Settlement Agreement and the Settlement Sum Allocation Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019; and the Court having jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that this is a core proceeding under 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and the Court having reviewed the Motion; and, after due deliberation, the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; it is **HEREBY ORDERED THAT**:

1. The Motion is granted as set forth herein.

2. The Revised MGEN Settlement Agreement, substantially in the form attached to the Notice of Revised MGEN Settlement Agreement as **Exhibit A**, is approved.

---

[2] Capitalized terms not defined shall have the meanings ascribed to them in the Motion and the Notice of Revised MGEN Settlement Agreement.

2

**Error! Unknown document property name.**

| | |
|---|---|
| Page: | 3 |
| Debtor: | Global Benefits Group Inc., *et al.* |
| Case No.: | 24-16134 (CMG) |
| Caption: | Order, Pursuant to Federal Rule of Bankruptcy Procedure 9019, Approving: (i) MGEN Settlement Agreement; and (ii) Settlement Sum Allocation Agreement |

3. The Settlement Sum Allocation Agreement, substantially in the form attached to the Motion as **Exhibit C**, is approved.

4. The provisions of the Revised MGEN Settlement Agreement and the Settlement Sum Allocation Agreement shall be effective in accordance with their terms, and the parties thereto are authorized and directed to perform their obligations thereunder. By this reference, the terms of the Revised MGEN Settlement Agreement and the Settlement Sum Allocation Agreement are incorporated herein as part of this Order.

5. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6. The requirements set forth in Local Rule 9013 that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

7. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Error! Unknown document property name.**

# Exhibit A

**(Revised MGEN Settlement Agreement)**

9808972

This **Settlement Agreement** is entered into this 30th day of July 2024

between

(1) **VYV International Benefits** (a French *Société par actions simplifiée* (joint stock company) with a share capital of EUR 1,000,000, registered at the *Registre du commerce et des sociétés* (the French Commercial and Company Registry) RCS PARIS under the number 813 361 441 and registered as an insurance intermediary with ORIAS under the number 16002500 and whose head office is located 3/5/7 Square Max Hymans 75748 Paris Cedex 15, France ("**VYV**")

Acting in the name and on behalf of:

(2) **MGEN**, a company duly incorporated and registered under the number SIREN 775 685 399, regulated by the provisions of Tome II of *Code de al Mutualité* (the French Mutual Insurance Companies Code) and whose head office is located at 3 square Max-Hymans 75 748 Paris Cedex 15, France ("**MGEN**")

(3) **Global Benefit Group, Inc.** a company duly incorporated and existing under the laws of the State of New Jersey, registered at 902 Carnegie Center Drive, Princetown, New Jersey 08540 ("**GBG Inc**")

(4) **GBG Insurance Limited** (in administration) a company duly incorporated and existing under the laws of Guernsey, registered at c/o Teneo, Bucktrout House, Glategny Esplanade, St Peter Port, Guernsey, GY1 1WR ("**GIL**")

Referenced collectively as the "**Parties**", and each individually as a "**Party**". **WHEREAS**:

a. GIL are an insurer who have, historically, underwritten various different types of insurance business either directly (including via coverholders) or via fronting arrangements.

b. On 21 December 2023 GIL entered into Administration, by order of the Royal Court of Guernsey. Alex Adam, Andrew Wood and Michael Tagg, all Insolvency Practitioners of Teneo, were appointed joint administrators of GIL (the "**Joint Administrators**").

c. On or around 30 December 2023, VYV, MGEN and GBG Inc entered into a letter of intent (the "**Letter of Intent**") pursuant to which the renewal rights for certain insurance business underwritten by GIL would be referred to VYV, so that former GIL policyholders would have the option of being insured by VYV (via its subsidiary company, MGEN). The business to be referred, as more particularly set out in the Letter of Intent, was as follows:

    (1) GIL's Life and Disability portfolio for North America and Europe (the "**Life and Disability Business**"); and

    (2) GIL's Medical portfolio for Europe (the "**Medical Business**")

12523418.v5

d.  In consideration for referring the Life and Disability Business and the Medical Business to them (and in the case of (d)(2)(ii) below, the ongoing administration of the Medical business by GBG Inc), the Letter of Intent provided that MGEN were to pay:

   (1) for Life and Disability Business, a "*first year upfront introducer fee of 10% of the gross written premium to GBG / GIL for each contract transferred.  This introducer fee will be paid by Trawick International* [on MGEN's Behalf] *to GBG / GIL at each instalment of the 1st year of coverage under MGEN contracts*" (the "**Life & Disability Introducer Fee**"); and

   (2) for Medical Business:

   (i)  a "*first year upfront introducer fee of 5% of the gross written premium to GBG for each contract transferred.  This introducer fee will be paid by Trawick International to GBG/ GIL at each Instalment of the 1st year of coverage under MGEN contracts*" (the "**Medical Introducer Fee**"); and

   (ii) a "*15% (of gross written premium) administration fee to GBG for the administration (premium collection, claims administration and payment) of the European Medical portfolio.  This Administration fee will be paid by Trawick International* [on MGEN's Behalf] *at each payment of the medical contracts by the policyholders and as long as GBG will administrate these medical policies*" (the "**Medical Administration Fee**")*.*

   (together, the payments under (d)(1) and (d)(2)(i), being known as the "**Introducer Fees**" and the payments under (d)(1), (d)(2)(i) and (d)(2)(ii) being known as the "**Introducer and Administration Fees**").

e.  Subsequent to the Letter of Intent, MGEN have underwritten Life and Disability Business and Medical Business following the referrals to them by GBG Inc and/or GIL. Consequently, GBG Inc and GIL have requested payment of the Introducer and Administration Fees from MGEN in full.  MGEN have denied that they are liable to pay the Introducer and Administration Fees yet, on the basis that the liability to pay the Introducer Fees has not yet arisen, and that the administration services have not been performed in full by GBG Inc and therefore there is no obligation to pay the Medical Administration Fee.  MGEN have made further allegations about the conduct of GBG Inc and/or GIL.  Consequently, the Parties are in dispute (the "**Dispute**").

f.  Notwithstanding the above, the Parties wish to settle the Dispute, and every Party's liability under the Letter of Intent, in order to avoid litigation and the costs that would be associated with that litigation.

**NOW THEREFORE** in consideration of the matters set out in this Settlement Agreement (the "**Agreement**"), the Parties agree as follows:

**1.     Interpretation and Effect of this Agreement**

1.1    The Recitals and all definitions set out above shall form part of this Agreement.

1.2    Upon signature of this Agreement by all of the Parties to it, it shall become a binding agreement between them and the terms of this Agreement shall be enforceable as a contract.

**2.     Settlement**

2.1    In settlement of the Dispute, and in consideration for the mutual releases set out in Clause 3 below, MGEN shall pay to GIL the sum of one million US dollars ($1,000,000.00) (the "**Settlement Sum**").  Payment of the Settlement Sum shall be made in accordance with the provisions of this Clause 2.

2.2    The Settlement Sum shall be paid by MGEN, in US dollars, in four equal monthly instalments of two hundred and fifty thousand US dollars ($250,000.00), as more particularly set out below:

(a)    The first instalment of two hundred and fifty thousand US dollars ($250,000.00) shall be paid by MGEN in five (5) business days after the date this Agreement is signed by all Parties to it.

(b)    The second, third, and fourth monthly instalments of two hundred and fifty thousand US dollars ($250,000.00) each shall be paid by MGEN on the 1, 2, and 3 month anniversaries of the date this Agreement is signed by all Parties to it.

2.3    Each instalment of the Settlement Sum shall be paid by MGEN into the following bank account:

1.    **One hundred and fifty thousand US dollars ($150,000) to:**

Account name:    Teneo Re GBG Insurance Limited – in administration

IBAN:    GB38 RBOS 1663 0000 8732 10

SWIFT:    RBOSGB2L

2.    **One hundred thousand US dollars ($100,000) to:**

12523418.v5                                           3

| | |
|---|---|
| Beneficiary: | Global Benefits Group, Inc. |
| ABA/Routing No: | 026009593 |
| Account No: | 27860-70529 |
| Swift Code: | BOFAUS3N |

2.4 Should MGEN fail to pay any of the instalments on the date it falls due in accordance with Clause 2.2 above, it shall have a grace period of 7 business days to make such payment.

2.5 Should any instalment of the Settlement Sum not be paid within the additional 7 business day grace period set out in Clause 2.4 above:

(a) The entire Settlement Sum (or any such amount of it that remains outstanding) shall become immediately due and payable by MGEN;

(b) Interest shall accrue on any such outstanding part of the Settlement Sum at a simple interest rate of 3% above the Euribor 12 month interest rate. Interest shall accrue daily on the settlement sum or such proportion of it as remains outstanding from the date on which such sum was due (including the grace period set out in clause 2.4) until payment of the Settlement Sum is received in full; and

(c) Any and all reasonable costs incurred by GIL and / or GBG Inc. in enforcing their rights under this Agreement shall be immediately due and payable by MGEN.

**3.  Release from liability**

Payment of the Settlement Sum shall between the Parties, their successors, predecessors, group companies and assigns, liquidators, subsidiaries in all countries where they do business, constitute and be deemed to be accepted as:

(a) a full and final settlement of; and

(b) an irrevocable release against

all claims, counterclaims, rights, liabilities, duties and obligations (including for interest and costs) owed by any Party to another Party insofar as they arise out of or are in any way directly or indirectly connected to the Letter of Intent, whether such claims, counterclaims, rights, liabilities, duties and obligations are in existence now or come into existence in the future, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, certain or contingent, however and whenever arising, in whatever capacity or jurisdiction, whether or not within the contemplation of the Parties and including claims which do not or may not exist at the time of this Agreement.

4. **Covenant not to sue**

Save as may be required to enforce the terms of this Agreement, the Parties to this Agreement covenant that following the execution of this Agreement, they will not, and will procure and/or ensure that none of their successors, predecessors, liquidators, subsidiaries, group companies and assigns shall, take any step or proceeding or make or assert any claim (whether by way of litigation, arbitration or otherwise) against any other Party or its successors, predecessors, liquidators, subsidiaries, group companies and assigns arising out of or in any way directly or indirectly connected to the Letter of Intent.

5. **Costs**

The Parties shall each bear their own costs in relation to this Agreement, save insofar as any costs are incurred for the purpose of enforcing this Agreement.

6. **Authority to settle**

6.1 Each Party warrants and represents that it has not sold, transferred, assigned or otherwise disposed of its interest in the Letter of Intent.

6.2 Each Party warrants and represents that it and its signatories have the full right, power and authority to execute, deliver and perform this Agreement without reference to any other person, and that no acts or proceedings are necessary to authorise the execution or performance of this Agreement.

7. **Confidentiality**

7.1 Subject to the provisions of this Clause 7, the Parties covenant and undertake that they will treat as confidential, and not disclose to any third party, the existence or terms of this Agreement.

7.2 Notwithstanding Clause 7.1 above, each Party shall be permitted to disclose this Agreement or its existence:

(a) on a confidential basis to its own employees, officers, directors, auditors, legal, or other professional advisers;

(b) where required by order or request of a court, administrative tribunal, arbitration panel, or regulatory or governmental agency;

(c) where necessary to enforce the terms of this Agreement; or

(d) where each non-disclosing Party has agreed to such disclosure in writing.

8. **Variation**

No amendment or variation of this Agreement shall be valid unless agreed in writing and signed by an authorised signatory of each Party.

9. **Applicable Law and Jurisdiction**

This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with the law of France and the courts of Paris shall have exclusive jurisdiction to resolve any such dispute or claim.

10. **Counterparts**

This Agreement may be signed and executed in counterparts, each of which shall be deemed to be an original. All signed copies shall together constitute one agreement.

11. **Invalidity**

11.1. If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any relevant jurisdiction, that shall not affect or impair:

   (a) the legality, validity or enforceability in that jurisdiction of any other provision of this Agreement; or

   (b) the legality, validity or enforceability under the law of any other jurisdiction of that or any other provision of this Agreement.

11.2. The Parties shall then construe and configure this Agreement in such a way that the purpose aimed at by its void or legally ineffective parts may nonetheless be achieved insofar as this is possible.

12. **Miscellaneous**

12.1 No Party shall, without the prior written consent of all other Parties, assign, transfer or in any other way make over to any third party the whole or part of its respective rights and obligations hereunder.

12.2 Nothing in this Agreement is intended or shall be construed to give any person, other than the Parties, any legal or equitable right, remedy, or claim under or in respect of this Agreement or any provision contained herein.

12.3 This Agreement shall constitute the entire agreement between the Parties in relation to the subject matter hereof.

**IN WITNESS WHEREOF** the Parties have executed this Agreement on the date stated at the beginning of this Agreement.

**Signed for and on behalf of VYV**

………………………………………………….

**Name:**

**Position:**

**Date: 30 July 2024**

**Signed for and on behalf of MGEN**

………………………………………………….

**Name:**

**Position:**

**Date: 30 July 2024**

**Signed for and on behalf of GBG Inc**

………………………………………………….

**Name:**

**Position:**

**Date: 30 July 2024**

**Signed for and on behalf of GIL (in administration)**

12523418.v5

7

………………………………………………….

**Name:**

**Position:**

**Date: 30 July 2024**

12523418.v5

8